# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-50687
Summary Calendar

IRENE HERNANDEZ,

Plaintiff-Appellant,

v.

SBC COMMUNICATIONS INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
No. 3:05-CV-472

Before REAVLEY, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

In March 2003, SBC Medical Absence and Accommodation Resource Team ("SMAART"), an entity that administers disability claims for SBC Communica-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

tions Inc. ("SBC"), denied Irene Hernandez's appeal of a decision terminating her disability benefits. About a month later, Hernandez submitted additional medical information that SMAART refused to consider. Hernandez sued SBC, arguing, inter alia, that SMAART abused its discretion in refusing to review the additional evidence. The district court granted summary judgment, holding that even if the additional evidence is considered, SMAART's determination was permissible. We affirm.

I.

In January 2002, Hernandez began short-term disability leave under SBC's disability plan. She was treated bySSamong other doctorsSSCesar Maldonado and Natalie Bornstein, both of whom are physicians; Elizabeth Young, a mental health therapist; and Roberta Fennig, a psychiatrist.

SMAART continued to extend Hernandez's short-term disability through early August 2002 based on medical information it had received from her doctors. SMAART received no additional medical information to substantiate her status after August 1 and consequently denied her benefits. In September, SMAART spoke again with Fennig, and Hernandez's benefits were extended through October 16. On October 17, SMAART received a letter from Bornstein stating that Hernandez would be unable to return to her performance level. SMAART asked Bornstein for additional information to support that position; Bornstein did not immediately respond.

SMAART denied Hernandez's benefits beginning October 29. On November 13, Bornstein contacted SMAART, stating that Hernandez felt that she could not "sit, stand, or lie down for more than 20 minutes at a time." SMAART's position was that Bornstein's letter merely re-stated Hernandez's own claims and was not based on observable data.

In early December, SMAART informed Hernandez that she could appeal,

but her doctors needed to provide evidence of her level of functionality, a description of how her level of functionality impacted her ability to work and perform daily activities, and a detailed rationale with clinical documentation of those conclusions. Two independent physician advisors ("IPA") were selected by SMAART to assess the matter. One of them, Jack Greener, reported that Fennig had opined that Hernandez's physical condition was the cause of her depression, and Greener concluded that Fennig did not describe "severe anxiety, concentration and attention or memory problems of such severity that [Hernandez] could not perform her regular job."

The other IPA, Jose Perez, Jr., reported that Bornstein had stated that most of Hernandez's symptoms were related to fatigue and were subjective and that her lab work for Hernandez was not specific for any diagnosable disease.[1] Perez noted that evidence of recent examinations was lacking, concluding that according to "the information provided and from an internal medicine perspective, Ms. Hernandez is not disabled from her job from 10/29/02 to the present."

Based on its review of the file and those reports, in late March 2003 SMAART upheld the termination of benefits, noting that Hernandez was unable "to substantiate a severe condition preventing [her] return to work in some capacity . . . ." The disability policy at issue stated that short term disability was available only when "an Employee is unable to perform all of the essential functions of his job or another available job assigned by the Participating Company with the same full- or part-time classification for which the Employee is qualified."

In May 2003, Hernandez contacted SMAART to provide more medical information, including the records of three additional doctors: R.J. Abresch, R.

---

[1] Hernandez argues that the illness from which she suffersSSfibromyalgia, chronic fatigue syndrome, or Epstein-Barr virusSSis not necessarily accompanied by objectively verifiable symptoms and that, in any case, there were some objective indications that she was suffering from an illness.

Marwah, and Steven Crouse. Hernandez said that she informed SMAART about those three doctors and that SMAART had assured her it would obtain their records too; SMAART refused to consider the documents. Hernandez contends that those treatment records corroborate her other doctors' opinions that she suffers from fibromyalgia, chronic fatigue syndrome, and/or Epstein-Barr virus. Hernandez contends on appeal that it was an abuse of discretion for SBC and SMAART not to review the additional doctors' records.

## II.

We review de novo a summary judgment under Federal Rule of Civil Procedure 56. See, e.g., TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002). A summary judgment will be affirmed "only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when viewed in the light most favorable to the non-movant, 'show that there is no genuine issue of material fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." TIG, 276 F.3d at 759 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Although the "court must draw all justifiable inferences in favor of the non-moving party," a genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

"ERISA provides the federal courts with jurisdiction to review determinations made by employee benefit plans, including health care plans." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 295 (5th Cir. 1999) (en banc) (citing 29 U.S.C. § 1132(a)(1)(B)). "[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review [is for] abuse of dis-

cretion." Id. (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). "The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." Id. at 297. Where a plaintiff has "demonstrated the minimal basis for a conflict" but has "presented no evidence with respect to the degree of the conflict," we review the administrator's decision "with only a modicum less deference" than usual. Id. at 301.

The "'arbitrary and capricious' standard [is] part of abuse-of-discretion review," and "we affirm an administrator's decision if it is supported by substantial evidence. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." Meditrust Fin. Svcs. Corp v. Sterling, 168 F.3d 211, 215 (5th Cir. 1999) (internal citations and quotations omitted).

## III.

"Out of an abundance of caution," the district court reviewed the additional medical reports, declining to decide whether evidence provided by claimants to plan administrators after the administrators have rendered a final disposition but before the filing of a lawsuit must be considered by the administrators under Vega. The court ruled that though SMAART's decision should be reviewed with less deference because of possible self-interest, and even if the additional records were considered, there was no abuse of discretion. We affirm the district court essentially for the reasons it offered.

SMAART denied Hernandez's appeal based on the reports of, inter alia, two independent physician advisors.[2] There was a rational connection among

---

[2] The use of "independent medical consultants" favors upholding the plan administrator's decision. See Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601-02 (5th Cir.

their recommendations, the other evidence in Hernandez's file, and SMAART's conclusions that Hernandez could perform her duties. That is enough in light of our standard of review. Even if Hernandez was suffering from illnesses of some sort, SMAART did not abuse its discretion in denying her appeal, because there were no documented findings that her illnesses were sufficiently severe to prevent her from doing her job.

The additional documents that Hernandez argues should be considered do not change this. SMAART never determined that she was not suffering from fibromyalgia, chronic fatigue syndrome, or the like, but only that there was insufficient evidence of impaired working ability as a result of the illness. Nothing in the additional records undermines SMAART's conclusion.[3]

AFFIRMED.

---

1994).

[3] See Boardman v. Prudential Ins. Co., 337 F.3d 9, 16-17 n.5 (1st Cir. 2003) ("Prudential was willing to accept that Boardman suffered from the illnesses she reported to her doctors. [But] Prudential wanted objective evidence that these illnesses rendered her unable to work. While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."); Roach v. Prudential Ins. Brokerage, Inc., 62 Fed. App'x 294, 299 (10th Cir. 2003) ("In this case, substantial evidence supported Prudential's denial of Ms. Roach's request for . . . benefits [despite evidence that Roach suffered from chronic fatigue syndrome]. Two independent physicians, Dr. Brachman and Dr. Marble, had concluded that Ms. Roach did not satisfy the Plan's definition of 'Total Disability,' insofar as she was not 'unable, due to sickness or injury, to perform the material and substantial duties of [her] occupation.' Accordingly, the district court properly concluded that Prudential's benefits determination was not arbitrary or capricious."); Dennis v. Standard Ins. Co., 1994 U.S. App. LEXIS 37288 (9th Cir. Dec. 29, 1994) (mem.) (unpublished) (stating that mere diagnosis of chronic fatigue syndrome without showing of impairment is insufficient to find an abuse of discretion); Nichols v. Verizon Commc'ns, Inc., 78 Fed. App'x 209, 212 (3d Cir. 2003) ("The record reveals that the denial of Nichols' claim was based on any number of factors, including the lack of objective tests demonstrating the existence of her symptoms, something a claimant with CFS might reasonably be asked to provide.").